Moran
v.
Dawes.

## MORAN *against* DAWES.

In general, the plaintiff has his election to bring case or trespass, for debauching his female servant.

Case is, in all cases, a proper remedy.

To establish the relation of master and servant, in this action, the slightest acts of service are sufficient.

CASE for seducing and debauching Jane Moran, the daughter and servant of the plaintiff, *per quod servitium amisit ;* tried before EDWARDS, C. Judge, at the New York circuit, January 12th, 1825.

On the trial, Jane Moran, a witness for the plaintiff, testified that she was the daughter of the plaintiff, and at the time of the connection between her and the defendant, she was over the age of 21 years. That she then lived with her mother in Rector street, in the city of New York, in a house owned by her brother ; that her brother, mother and sister, also resided there ; that her mother was the mistress of the house ; that they had a common table ; that each, out of their earnings, supported the establishment ; she, and her brother and sister, furnishing money out of their earnings, which made a common fund in the hands of her mother, who out of this fund, purchased the necessary articles for the family ; the mother rendering her services only ; that the witness sometimes made up garments for her mother gratuitously, as a daughter would ; and that she assisted her mother in her household affairs.

That while living with her mother in this way, the defendant, in the absence of the mother, and the other occupants of the house, entered her room in the day time, about mid-day, while she was lying on her bed asleep, and had carnal knowledge with her, first by force and against her will, but she yielded before the conclusion.

The plaintiff having rested here, the defendant's counsel moved for a nonsuit on the ground that the action should have been trespass ; and that the relation of mistress and servant was not established. The Judge overruled the motion, and the defendant excepted.

*A. Spencer*, moved for a new trial ; and, to show that the action should have been trespass, he cited *Ditcham* v. *Bond,*

(2 M. & S. 436,) *Woodward* v. *Walton*, (5 B. & P. 476,)
and *Crosby* v. *Leng*, (12 East, 409.)

To show that the relation of mistress and servant was
not established, he cited *Postlethwaite* v. *Parkes*, (3 Burr.
1878,) and *Bennet* v. *Allcott*, (2 T. R. 166.)

C. D. *Colden*, contra, to show that case was proper, cited
2 Chit. Pl. 266, 268; Archb. Civ. Pl. s. 5, p. 25; 1 Chit. Pl.
137; 1 Bl. Com. 429, and note by Christian; and *Martin* v.
*Payne*, (9 John. Rep. 387.) He admitted there was some
confusion in the English authorities, but thought they were
all reducible to the proposition, that the plaintiff may, at
his election, bring case or trespass.

To show that the relation of mistress and servant was
established, he cited 3 Bl. Com. 142, note by Christian;
Selw. N. P. 967; and 2 Phil. Ev. 156, 7.

*Curia.* The relation of mistress and servant, between
the plaintiff and her daughter, was sufficiently made out at
the trial. The slightest acts of service are sufficient, as
merely milking cows. (*Bennet* v. *Allcott*, 2 T. R. 168.) So
it is said making tea for, or attention to the plaintiff, dur-
ing sickness. (2 Phil. Ev. 157.) Mr. Philips very judi-
ciously remarks, that otherwise the action might be con-
fined to families in the lower ranks of life, where the daugh-
ter is literally a servant; and could never be extended to
the higher order, where it is generally more wanted; and
where the injury is often of a more aggravated kind. (Id.)

As to the form of the action: in England, trespass *vi et
armis*, seems to have predominated. (*Woodward* v. *Wal-
ton*, 5 B. & P. 476. *Ditcham* v. *Bond*, 2 M. & S. 436.
Reeve's Dom. Rel. 293.) Yet the right to bring case, laying
the injury with a *per quod servitium amisit*, has there, not
only been judicially recognized, but very able writers upon
English law treat this as the most proper form. (*Sater-
thwaite* v. *Duerst*, 5 East, 47, note (*a*). 1 Chit. Pl. 137, 138.
2 id. 267, note (*u*), and cases there cited. Christian's notes
to 1 Bl. Com. 429, and 3 id. 142.) Mr. Chitty has given the
precedent of a declaration in this form of action. (2 Chit.
Pl. 267.) Case is uniformly brought in Connecticut. (Reeve's

NEW YORK,
May, 1825.

Moran
v.
Dawes.

Dom. Rel. 293.)  And though trespass was holden to lie in Pennsylvania, yet case was pronounced the most appropriate remedy.  (*Ream* v. *Rank,* 3 Serg. & R. 315.)  Perhaps, with certain qualifications, the remark made at the bar, that the plaintiff may elect between trespass and case, is correct.  Where the seduction is accompanied with actual violence upon the person of the daughter, or an illegal entry, upon the plaintiff's close, or into his house, probably, in the first case, trespass would lie for the assault within the case of *Ditcham* v. *Bond ;* and in the last, there is no doubt, trespass *quare clausum, vel domum fregit,* would lie.  And in each case, damages for the seduction and loss of service may be laid as matter of aggravation.  But it is clear, we think, both upon principle and authority, that case is, without exception, a proper remedy.  (Selw. N. P. 1083. note (17) cites 2 T. R. 167, 8, per Buller, J. and per Holt, C. J.  Ld. Raym. 1032.)  Neither the injury to the person of the child, nor the property of the plaintiff, are, in truth, ever taken into the account.  They are little more than a mere fiction, adopted in order to sustain the remedy by trespass.  The direct injury may be waived in all cases; and the declaration framed to meet the consequential injury, disregarding entirely every consideration except the loss of service, and the more important one of seduction and disgrace.  A very usual case may be supposed, in which, if we are to be governed by the technical rules relating to an action of trespass, the father would be remediless, for the most aggravated form of the injury, unless he has an election.  The seducer is received at the dwelling of the father on the footing of a suitor ; he thus having a license to enter the house, of which he avails himself to accomplish the seduction, with the consent of the daughter.  It could hardly be said that trespass and assault would lie for such an act.  The father is then put to his remedy by trespass *quare domum fregit,* laying the seduction, &c. by way of aggravation.  The defendant does not become a trespasser *ab initio ;* for license was given by the party.  A person, who is guilty of abusing an authority in fact, does not thereby become a trespasser *ab initio ;* but it is otherwise where a license is given by law.  (6 Bac. 560,

561, and the cases there cited. 8 Rep. 146.) The de-
fendant may, therefore, justify the entry. It is a rule that
the trespass itself being justified, this also reaches the mat-
ter laid in aggravation; (*Taylor* v. *Cole*, 1 H. Bl. 555;)
and thus the defendant would be acquitted of the entire
charge against him. It cannot be that the law ever in-
tended to trammel this remedy by imposing upon the par-
ty such an absurd result. It marks the limit of the prose-
cution, by confining it to one holding the relation of mas-
ter, (*Nickleson* v. *Stryker*, 10 John. Rep. 115,) from which
it looks directly to the consequential injury as the vital
spark of the action; thus reducing the case to the plain
and familiar principle which marks the distinction between
trespass and case. On the whole, we are all perfectly
clear, that case was well brought; and the motion for a
new trial must be denied.

New trial refused.