FRITZ TITTLEBAUM, DEFENDANT IN ERROR, v. WILLIAM BOEHMCKE, PLAINTIFF IN ERROR.

Submitted March 27, 1911—Decided June 22, 1911.

1. An action for seduction may be maintained by one standing *in loco parentis* to an illegitimate child; whether the plaintiff occupied that *status* was a fact question for the jury.
2. The damages recoverable are such in character as may be recovered by a natural parent.

On error to the Supreme Court.

For the plaintiff in error, *John J. Fallon.*

For the defendant in error, *August C. Streitwolf, Jr.*

The opinion of the court was delivered by

MINTURN, J. The facts in evidence, upon which the plaintiff based his action, and secured a verdict, are that when he married his wife she was the mother of an infant girl of tender years, who, in the eye of the law, was *filia nullius,* but who grew up in his family under his parental authority and tutelage, assisting, as would his own child, in the management and care of the home, ministering to his comfort and occupying for all practical purpose the *status* of a daughter in the household. That, when she attained the age of fifteen she was lured by this defendant from the home and seduced, and that, after about one year's intercourse with her, and when her pregnancy was suspected, he purchased her necessary outfit and her sailing ticket, and, accompanying her to the vessel, shipped her to Europe. Inquiries revealed the fact to the plaintiff that she was located at Hamburg, in Germany, and there the plaintiff sent her mother, who brought the girl back to her home.

The defendant met this situation by alleging that the girl was not the plaintiff's child, and that he did not stand *in loco parentis,* and therefore had no legal grievance.

This plea of confession and avoidance was buttressed by denials of facts which the jury resolved against him by their verdict, to the effect that there was no proof that the defendant enticed her from her home, and, entirely immaterial to his liability for the tort, that he did not know that she was a minor.

Whether the plaintiff, under the testimony, stood *in loco parentis* to this girl, was left by the learned trial court to the jury to determine, and they have concluded that he did.

But the basic insistment upon the motion to nonsuit was predicated upon the notion that the girl being *filia nullius,* and, therefore, daughter only to her mother, became paternally ostracized, and could not, legally speaking, occupy a *status* which would concede to her the care and love of a father. This the learned trial court properly denied, for the contention proceeds upon an entire misconception of the legal *status* occupied by the plaintiff.

The gravamen of the action, by whomsoever prosecuted, is not predicated upon the relationship of parent and child, but upon that of master and servant, the distinctive allegation in the common law declaration being *per quod servitium amisit.* 1 *Chit. Pl.* 135; 2 *Add. Torts* 512; *Clark* v. *Clark, 34 Vroom* 1; *Coon* v. *Moffit, 2 Penn.* 583; *Van Horn* v. *Freeman,* 1 *Halst.* 322.

In *Manvell* v. *Thomson, 2 C. & P.* 303, the action was maintained by an uncle; in *Paterson* v. *Wilcox, 20 U. C. C. P.* 385, by a brother; in *Ball* v. *Bruce, 21 Ill.* 161, by a guardian; in *Davidson* v. *Goodale, 18 N. H.* 431, by a cousin; in *Certwell* v. *Hoyt, 6 Hun (N. Y.)* 575, by a grandfather, and in *Harrison* v. *Newkirk, Spenc.* 176, by a stepfather. "And," says Tiffany, "generally an action will lie by any person who stands *in loco parentis,* and is therefore entitled to the child's services." *Domestic Rel.* 283; *Middleton* v. *Nichols, 33 Vroom* 636, and cases collected in 35 *Cyc.* 1303.

It is objected finally that an incorrect rule of damage was applied by the learned trial court when it instructed the jury "that the same rule of damages applies as in the case of a

natural parent." The objection is not supported by a sealed exception, and properly is not before us for consideration. Nevertheless, we may say that the rule applied by the learned trial court is the recognized rule, supported by the general consensus of authority, as well as by the elucidation of the text-writers of the theory of the common law upon which the action has been supported. *Van Horn* v. *Freeman, supra; Ogborn* v. *Francis,* 15 *Vroom* 441; *Williams* v. *Hutchinson,* 3 *N. Y.* 312, and cases collected in 35 *Cyc.* 1323.

"'Thus,'" says Addison in his succinct, yet comprehensive summary of the doctrine underlying the cases, "the action may be brought by any person with whom the seduced girl was residing at the time she was seduced, either in the character of a daughter and servant, or as maid and servant, or as servant only; and standing *in loco parentis* and being thus entitled to sue, he is permitted to recover damages beyond the mere loss of service, as when the action is brought by the actual parent." Citing *Irwin* v. *Dearman,* 11 *East* 24; *Edmondson* v. *Machell,* 2 *T. R.* 4.

If such a loss may be said to be circumscribed by limitations, Lord Eldon adequately defined them when he said that a jury "may take into consideration all that a parent can feel from the nature of the loss." *Bedford* v. *M'Kowl,* 3 *Esp.* 120.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, CONGDON, SULLIVAN, JJ. 13.

*For reversal*—None.